**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN MEZZALINGUA ASSOCIATES., INC., d/b/a**
**PPC, INC.,**

                                **Plaintiff,**

                                    v.                                  5:08-CV-1179
                                                                                  (FJS/GHL)

**ASKA COMMUNICATION CORP.,**

                                **Defendant.**
_____

**APPEARANCES**                                       **OF COUNSEL**

**MARJAMA, MULDOON, BLASIAK &**        **JAMES R. MULDOON, ESQ.**
**SULLIVAN, LLP**                              **DENIS J. SULLIVAN, ESQ.**
250 South Clinton Street                    **THOMAS HOEHNER, ESQ.**
Syracuse, New York 13202
Attorneys for Plaintiff

**MENTER, RUDIN & TRIVELPIECE, P.C.**    **JAMES H. McGOWAN, III, ESQ.**
308 Maltbie Street                             **JULIAN B. MODESTI, ESQ.**
Suite 200
Syracuse, New York 13204
Attorneys for Defendant

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

      On November 4, 2008, Plaintiff filed this patent infringement action seeking equitable and monetary relief because of Defendant's importation and sales of allegedly infringing products. Currently before the Court is Defendant's motion to dismiss for lack of personal jurisdiction and for improper venue or, in the alternative, to transfer venue.

## II. BACKGROUND[1]

Plaintiff John Mezzalingua Associates, Inc. is a Delaware corporation with its principal place of business located at 6176 East Molloy Road, East Syracuse, New York. Plaintiff is a leader in the design, development, and marketing of coaxial cable connectors for use in the telecommunications and cable television industries.

Defendant ASKA Communication Corporation is a Florida corporation with its principal place of business in Pompano Beach, Florida. It is in the business of importing and selling parts and accessories for the audio, video, cable and satellite television installations market. In executing this business model, Defendant uses distributors in thirty-one different states, including New York, through which Defendant offers to sell and sells its products. On its website, Defendant lists four distributors located in New York; two of which are located in the Northern District. *See* Plaintiff's Memorandum of Law at 3 (citation omitted). Defendant's website directs those interested in the products offered for sale on its website to their local distributor. Defendant's website also contains hyperlinks that directly connect the customer to each distributor's website.

In or about April 2004, Plaintiff learned that Defendant, one of its competitors, was selling "knock-offs" of Plaintiff's patented coaxial cable connectors. *See id.* (citation omitted). As late as April 2008, Defendant offered the allegedly infringing connectors for sale in its product catalog. *See id.* at 4 (citation omitted).

As a result of Defendant's continued importation, offers to sell, and sales of the infringing connectors, on or about April 28, 2008, Plaintiff filed a complaint with the United States

---

[1] Unless otherwise indicated, the parties do not dispute the facts provided in the "Background" section.

International Trade Commission ("ITC") against Defendant and other parties. The complaint alleged, in part, that Defendant imported coaxial cable connectors that Edali Industrial Corporation of Taiwan ("Edali") manufactured that infringed on Plaintiff's patents and that Defendant sold the infringing connectors within the United States.[2]

On November 4, 2008, Plaintiff filed this action against Defendant seeking injunctive relief and monetary damages for Defendant's past and ongoing acts of infringement.

On February 24, 2009, Defendant filed the present motion to dismiss for lack of personal jurisdiction and venue. Defendant asserts that it does not have sufficient contacts with New York to give the Court either general or specific personal jurisdiction over it under New York's long-arm statute and that the exercise of jurisdiction would offend the principles of due process. *See* Defendant's Memorandum of Law at 4.

In the alternative, Defendant moves to dismiss for improper venue, claiming that, pursuant to 28 U.S.C. § 1400(b), venue is not appropriate in the Northern District of New York and that the Court should transfer this action to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a) because Defendant's sole place of business is in that district and the convenience of the parties and witnesses, as well as the interests of justice, favors such transfer. *See id.* at 9.

---

[2] On or about July 30, 2008, the ITC terminated its investigation based on a consent order stipulation. In the consent order, Defendant agreed to stop importing, selling, or offering to sell the allegedly infringing connectors.

### III. DISCUSSION

**A.     Defendant's motion to dismiss for lack of personal jurisdiction**

*1. Rule 12(b)(2) standard*

When served with a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (citation omitted). Prior to discovery and in the absence of an evidentiary hearing, a plaintiff may meet this burden "'by pleading in good faith . . . legally sufficient allegations of jurisdiction,' i.e., by making a '*prima facie* showing' of jurisdiction." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854, 111 S. Ct. 150, 112 L. Ed. 2d 116 (1990)) (other citations omitted); *see also Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003) (citation omitted); *Rescuecom Corp. v. Hyams*, 477 F. Supp. 2d 522, 527-28 (N.D.N.Y. 2006) (citation omitted). A plaintiff can make this showing through its own affidavits and supporting materials containing assertions of fact, which, if believed, would suffice to establish jurisdiction. *See Whitaker*, 261 F.3d at 208 (citations omitted). Finally, "[i]n the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Elecs. for Imaging*, 340 F.3d at 1349 (citations omitted).

*2. Personal jurisdiction in patent cases*

In determining jurisdictional issues in patent cases, district courts apply the law of the Federal Circuit. *See Hypoxico, Inc. v. Colorado Altitude Training LLC*, No. 02 Civ. 6191, 2003

WL 21649437, *1 (S.D.N.Y. July 14, 2003) (citing *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002)).

The Federal Circuit has established a two-part test for courts to use to determine whether the exercise of personal jurisdiction is proper. *See Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) (quotation omitted). To establish jurisdiction, the plaintiff must show that (1) the state's long-arm statute permits service of process and that (2) the exercise of jurisdiction would not violate the Due Process Clause. *See id.* (quotation omitted).

### *a. Long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)*

Plaintiff asserts that this Court may exercise personal jurisdiction over Defendant pursuant to New York State's long-arm statute because Defendant transacts business in New York and in this District by offering to sell its products through its own website, which specifically targets customers in this State and District, and because Defendant purposefully established a network of distributors, including at least two of which are physically located in this District. Moreover, Plaintiff asserts that its cause of action arises directly out of Defendant's business activities within New York. Finally, Plaintiff asserts that Defendant committed the tort of patent infringement by offering to sell the infringing connector, from its corporate headquarters in Florida, which caused injury to Plaintiff within this District.

Plaintiff asserts that this Court has long-arm jurisdiction over Defendant pursuant to N.Y. C.P.L.R. § 302(a)(1)-(3).[3]

---

[3] The New York long-arm statute provides that,

(continued...)

Section 302(a)(1) authorizes a court to exercise personal jurisdiction over any defendant who (1) transacts any business within the forum or (2) contracts anywhere to supply goods or services in the forum, so long as the cause of action arises from the in-state transaction of business or from the subject of the contract. *See Great N. Ins. Co. v. Constab Polymer-Chemie GMBH & Co.*, 75 Fed. Appx. 824, 825-26 (2d Cir. 2003) (quoting N.Y. C.P.L.R. § 302(a)(1)). Courts analyze the "transacting business" and "contracting to supply goods" prongs of section 302(a)(1) separately, and "either . . . can form a basis for the exercise of personal jurisdiction . . . ." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 786 (2d Cir. 1999) (citations omitted).

With regard to the "transaction of business" prong, it is well-established that a party need not be physically present in the state at the time of service of process in order for the court to obtain

---

[3](...continued)
>     [a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
>     1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>     2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>     3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>         (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>         (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; . . .

N.Y. C.P.L.R. § 302(a).

personal jurisdiction. *See id.* at 787 (citation omitted). A court may exercise jurisdiction under section 302(a)(1) if

> (1) the defendant's business activities in New York [are] activities by which the defendant projects itself into New York in such a way as to purposefully avail itself of the benefits and protections of New York laws and (2) the plaintiff's cause of action . . . arise[s] out of that business activity within the state.

*Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1386 (Fed. Cir. 1988) (citations omitted).

Section 302(a)(1) "'is a single-act statute requiring but one transaction – albeit a purposeful transaction – to confer jurisdiction in New York.'" *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) (quotation omitted); *see also Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1333 (Fed. Cir. 2001) (holding that "[a] single business transaction is sufficient to satisfy the nexus test under section 302(a)(1), but 'the cause of action must arise from the transaction of business in New York'" (quotation and other citations omitted)). Several courts have found that the creation and maintenance of an interactive commercial website amounts to the transaction of business to support a finding of jurisdiction under section 302(a)(1). *See Rescuecom Corp.*, 477 F. Supp. 2d at 529 (citing cases); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565-66 (S.D.N.Y. 2000) (holding that a corporation that makes sales to out-of-state customers through a website can become subject to the jurisdiction of that state's courts (citations omitted)); *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007) (holding that the level of "a website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant 'transacts any business' in New York – that is, whether the defendant, through the website, 'purposefully avail[ed] himself of the privilege of

conducting activities within New York, thus invoking the benefits and protections of its laws'" (quotation and other citation and footnote omitted)).

In the present case, the activities in which Defendant allegedly engaged occurred primarily through its website, which has several interactive features. First, it allows customers to place orders for products through a link that allows the user to email Defendant requesting the product in question and quantity required. *See* ASKA Communication Corp.'s Product Page, http://www.askacom.com/productsgroup.php (last visited March 29, 2010). It is unclear if the customer can actually order from the site or if the customer merely alerts Defendant to its potential needs, thereby prompting Defendant to contact the customer.[4] Second, the website allows customers to email Defendant's customer service department through a link on its website. *See* ASKA Communication Corp.'s Customer Service Page, http://www.askacom.com/contactus.php (last visited March 29, 2010). Third, a page on the website provides hyperlinks that allow users to email or go to the website of any of Defendant's distributors throughout the country. *See* ASKA Communication Corp.'s Distributors Page http://www.askacom.com/distributors.php (last visited March 29, 2010). Such functions clearly render this website commercially "interactive."

Plaintiff claims and Defendant admits that it has several distributors/customers located in New York. Moreover, Defendant admits that it enters into "non-exclusive agreements with its distributors." *See* Reply Affidavit of Toshi Nigorikawa dated March 30, 2009 ("Nigorikawa Reply Aff."), at ¶ 13. Such agreements with businesses in New York show Defendant's intent to transact

---

[4] Defendant asserts that a customer cannot actually order products from its website. *See* Reply Affidavit of Toshi Nigorikawa dated March 30, 2009 ("Nigorikawa Reply Aff."), at ¶ 9. Even assuming that this is true, as in *Citigroup, Inc.*, this would show a more purposeful intent on Defendant's part to transact business in New York because Defendant would then have to take the order either by phone or mail, both requiring purposeful human interaction.

business in New York with these distributors, who would then foreseeably sell Defendant's products to others within the state.[5]

In addition to its website activities, Defendant admits that it sold the allegedly infringing product to its distributors in New York and that 0.15% of its total sales and net revenues are the result of the sale of the infringing products to 3R's Cables in Bronx, New York. *See* Affidavit of Toshi Nigorikawa dated February 24, 2009 ("Nigorikawa Aff."), at ¶ 13. Further, Defendant admits that 2.5% of its total sales and net revenues come from three customers in New York. *See id.* at ¶ 12; Defendant's Memorandum of Law at 5-6 (citation omitted).[6] Even if Defendant does not exercise any control over its distributors, as it asserts, this does not change the fact that Defendant actually sold the infringing product to these distributors in New York.

In light of the foregoing, the Court concludes that Defendant transacts business in New York

---

[5] Toshi Nigorikawa, Defendant's President, stated that Defendant had three customers in New York – "(i) 3 R's Cables located at 3630 Corlear Avenue, Bronx, in Bronx County, New York 10463; (ii) Scott Cable Communications, Inc., in Farmindale in Nassau County, New York 11735; and (iii) All Systems Satellite located at 766 East 93rd St., Brooklyn, in Kings County, New York 11236." *See* Affidavit of Toshi Nigorikawa dated February 24, 2009 ("Nigorikawa Aff."), at ¶ 9. Defendant's website, however, identifies four distributors in New York State, three of which Mr. Nigorikawa did not mention in his affidavit: (1) All Systems Satellite, Brooklyn, New York; (2) All Systems Satellite, Saugerties, New York; (3) All Systems Satellite, Hornell, New York; and (4) Cable Technologies, Mechanicville, New York. *See* Declaration of Thomas Hoehner sworn to March 24, 2009 ("Hoehner Decl."), at Exhibit "D." As such, assessing this information in the light most favorable to Plaintiff, Defendant would appear to have six distributors located in New York. Furthermore, of those distributors located in this District, Cable Technologies offered for sale the allegedly infringing products. *See id.* at ¶ 8 and Exhibit "G" annexed thereto.

[6] This number is based on Defendant's assertion that it has three customers in New York. However, based on Mr. Nigorikawa's declaration and Defendant's website, it appears that Defendant has at least six distributors in New York and, therefore, at least six customers in New York. As such, it is reasonable to assume that Defendant made additional sales in New York, which have not yet been taken into account.

within the meaning of section 302(a)(1).

It is also clear that Plaintiff has met its *prima facie* burden to establish that Defendant has contracted to supply its goods within New York. Under this prong of section 302(a)(1), all that a plaintiff must allege to survive a motion to dismiss is that there was a contract to ship goods to New York and that the defendant, in fact, shipped goods under the contract. *See Great N. Ins. Co.*, 75 Fed. Appx. at 826 (citing *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 37 (2d Cir. 2001)) (other citations omitted).

As already discussed, Defendant admits that 2.5% of its total sales and net revenues came from sales to New York and that 0.15% of its total sales and net revenues were sales of the infringing products to its distributor 3R's Cables in New York. *See* Nigorikawa Aff. at ¶¶ 12-13. Moreover, Defendant also admits that it enters into "non-exclusive agreements" with New York distributors which, in turn, offer to sell the infringing product. *See* Nigorikawa Reply Aff. at ¶ 13; *see also Lipton v. The Nature Co.*, 781 F. Supp. 1032, 1035-36 (S.D.N.Y. 1992) (holding that contracting with a distributor to distribute an infringing work in New York renders personal jurisdiction proper under this section (citations omitted)).

Although at this early stage of the litigation it is unclear how Defendant contracted to supply these goods in New York or under what terms, Plaintiff has alleged that Defendant contracted to supply the infringing products in New York; and Defendant has admitted that this allegation is true. As such, the Court concludes that Plaintiff has met its *prima facie* burden to establish that Defendant contracted to supply goods in New York.

Finally, even if a defendant has transacted business or contracted to supply goods in New York, the plaintiff must show that there is a "substantial nexus" between the transaction and the

cause of action. *See Pryor*, 425 F.3d at 166 (citation omitted). New York courts have interpreted this "nexus test" narrowly, *see Pieczenik*, 265 F.3d at 1333 (citation omitted), and "'have held that a claim "aris[es] from" a particular transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon," or when "there is a substantial relationship between the transaction and the claim asserted,"'" *Best Van Lines, Inc.*, 490 F.3d at 249 (quotation omitted). The connection must be more than "merely coincidental" to support jurisdiction. *Id.* (quotation omitted).

Based on the admitted sales and offers to sell the allegedly infringing products in New York, Defendant's clear intention to generate business in New York by listing its New York distributors on its website, and Defendant's sales agreements with its distributors in New York, it is clear that Plaintiff's cause of action for infringement directly arises from Defendant's business transactions in New York. *See Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000). Accordingly, the Court concludes that Plaintiff has alleged facts sufficient to establish that this Court has personal jurisdiction over Defendant under section 302(a)(1).[7]

---

[7] Additionally, the Court finds that Plaintiff has alleged facts sufficient to establish that the Court has personal jurisdiction over Defendant under section 302(a)(3) as well. Under section 302(a)(3), a New York court can exercise personal jurisdiction over a non-domiciliary who commits a tortious act outside the state, causing injury to person or property within the state, if that non-domiciliary expects or should reasonably expect that act to have consequences in the state and derives substantial revenue from interstate or international commerce. *See* N.Y. C.P.L.R. § 302(a)(3); *In re Houbigant, Inc.*, 914 F. Supp. 964, 979 (S.D.N.Y. 1995) (citation omitted).

"'The test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than subjective one.'" *Kernan v. Kurz-Hasting, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999) (quotation omitted). New York courts attempt to avoid conflict with federal due process limits on state-court jurisdiction by applying the "reasonable expectation" requirement in a manner that is consistent with Supreme Court

(continued...)

### b. Due Process[8]

Due process requires the plaintiff to demonstrate that the defendant has such "minimum contacts" with the forum state that the exercise of personal jurisdiction would not offend "'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation and other citation omitted). The Federal Circuit has set forth a three-factor test to determine whether asserting specific jurisdiction satisfies due process in a patent case: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Silent Drive, Inc. v. Strong Indus., Inc.*,

---

[7](...continued)
precedent. *See id.* (citation omitted). "Thus, New York courts have asserted that the simple likelihood or foreseeability 'that a defendant's product will find its way into New York does not satisfy this element, and that purposeful availment of the benefits and laws of New York such that the defendant may reasonably anticipate being haled into New York court is required.'" *Id.* (quotation and other citations omitted).

As relevant to this case, 35 U.S.C. § 271(a) makes it impermissible for anyone other than the patent holder to import, sell or offer to sell any patented product. Plaintiff has alleged, and Defendant admits, that Defendant imports the allegedly infringing products and sells them throughout the United States, including in New York. *See* Complaint at ¶¶ 5, 12-13; Nigorikawa Aff. at ¶¶ 10-15. This allegation sufficiently asserts that Defendant committed the tort of patent infringement without the state (as well as within). Defendant also admitted to entering into non-exclusive distributor agreements with distributors in New York and other states throughout the country. *See* Nigorikawa Reply Aff. at ¶¶ 13-14. All of these activities make it reasonably foreseeable that Defendant would be haled into court in New York.

[8] There is a split among the Circuits regarding whether the due process clause of the Fifth or Fourteenth Amendment applies. *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 n.\* (Fed. Cir. 1998) (citations omitted). The distinction, however, is "purely academic" because, although stating that the Fifth Amendment's Due Process Clause controls personal jurisdiction questions in federal question cases, the Federal Circuit still applies the test set forth in *International Shoe*, which pertains to the exercise of personal jurisdiction under the Fourteenth Amendment. *See id.* (citation omitted).

326 F.3d 1194, 1201-02 (Fed. Cir. 2003) (quotation and other citation omitted). The first two factors correspond with the "minimum contacts" prong of the *International Shoe* due process analysis, and the third factor corresponds to the "fair play and substantial justice" requirement. *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). The burden of proof for the first two factors is on the plaintiff while the burden is on the defendant to make a compelling case that other considerations render the exercise of jurisdiction constitutionally unreasonable. *See id.* (citation omitted).

### *i. Minimum contacts*

In *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994), the Federal Circuit found personal jurisdiction in Virginia over a foreign manufacturer and an out-of-state distributor. *See id.* at 1572. The court found that at least fifty-two of the manufacturer's fans had been sold in Virginia and that the defendants had formed a distribution channel in that state. *See id.* at 1564. "The allegations are that defendants purposefully shipped the accused fan into [the forum] through an established distribution channel. The cause of action for patent infringement is alleged to arise out of these activities. No more is usually required to establish specific jurisdiction." *Id.* at 1565 (citations and footnote omitted).

As discussed above, Defendant engaged in purposeful activities directed at New York. These activities included (1) maintaining an interactive website that is commercial in nature; (2) admitted sales in New York (including sales of the infringing products); (3) directing retail users of its website to its distributors' websites, some of whom are in New York and sold the infringing products; and (4) entering into non-exclusive distributor agreements with companies located in New

York through which it shipped products into New York.

Based on the foregoing, the Court concludes that Defendant purposefully directed activities at New York and that Plaintiff's cause of action for patent infringement arises out of these activities, thereby satisfying the minimum contacts requirement.

### *ii. Is the assertion of jurisdiction reasonable and fair?*

"[E]ven if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *Beverly Hills Fan Co.*, 21 F.3d at 1568 (footnote omitted). "In general, these cases are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Id.* (citations omitted).

In determining the reasonableness of the assertion of jurisdiction, courts should consider (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies. *See Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985) (citations omitted).

In the present case, none of these factors weigh in Defendant's favor. First, courts have noted that "'progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome.'" *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294

(1980) (quoting *Hanson v. Denckla*, 357 U.S. 235, 250-51, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)); *see also Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1356 (Fed. Cir. 2002) (finding that the burden on a Canadian defendant subject to suit in Kansas was "relatively minimal" (citation omitted)). Second, New York "clearly has an interest in prohibiting the importation of infringing articles into its territory. . . ." *See N. Am. Phillips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1580 (Fed. Cir. 1994) (citations omitted). This interest is even greater when, as in the present matter, the plaintiff is a domiciliary of the forum state.

Regarding the third factor, Plaintiff has an undisputed interest in protecting itself from patent infringement; and New York is convenient considering that Plaintiff and a number of potential witnesses reside here. *See* Haube Decl. at ¶¶ 16, 20-21. Regarding the fourth and fifth factors, the same body of federal patent law governs patent infringement claims irrespective of the forum; and, therefore, these factors do not favor Defendant's assertion that the exercise of jurisdiction in New York would be unreasonable. *See Elecs. for Imaging, Inc.*, 340 F.3d at 1352.

In view of the above, Defendant's arguments fall short of establishing that this is one of the "rare" situations in which sufficient minimum contacts exist but where the exercise of jurisdiction would be unreasonable. *See Beverly Hills Fan Co.*, 21 F.3d at 1568 (citing *Burger King*, 471 U.S. at 477, 105 S. Ct. at 2185) (other citation omitted). Accordingly, the Court concludes that its exercise of personal jurisdiction over Defendant would not offend due process.

### B.     Motion to dismiss for improper venue

As discussed, Defendant moved to dismiss for lack of personal jurisdiction and improper venue. Venue is a "non-issue," however, because "[v]enue in a patent action against a corporate

defendant exists wherever there is personal jurisdiction." *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) (citing *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990)) (other citation omitted).

Accordingly, the Court denies Defendant's motion to dismiss for improper venue.

**C.     Defendant's motion to transfer venue**

Section 1404(a) of Title 28 of the United States Code authorizes "a district court '[f]or convenience of the parties and witnesses, in the interests of justice' to move venue to any other district or division where the suit might have been brought." *Mills v. Beech Aircraft Corp. Inc.*, 886 F.2d 758, 761 (5th Cir. 1989) (quoting 28 U.S.C. Section 1404(a) (1982)).  The transfer statute is designed to prevent waste of resources and to protect litigants, witnesses, and the public from unnecessary inconvenience or expense.  *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

In analyzing a motion to transfer venue under section 1404(a), a court should consider (1) the weight to be given the plaintiff's choice of forum; (2) the relative means of the parties; (3) the convenience of the witnesses; (4) the situs of the operative events in issue; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the location of the relevant documents and the relative ease of access to those sources of proof; (7) the convenience of the parties; (8) the comparative familiarity of each district with the governing law;  and (9) judicial efficiency and the interests of justice.  *See Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc.*, No. 07-CV-1191, 2008 WL 4890377, *1 (N.D.N.Y. Nov. 12, 2008) (quoting *Rescuecom Corp. v. Chumley*, 522 F. Supp. 2d 429, 449 (N.D.N.Y. 2007)).  The decision to transfer venue is entrusted to the sound discretion of the trial court, *see Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865

F.2d 513, 520 (2d Cir. 1989) (citations omitted); and the party seeking transfer bears the burden of proof, *see Rescuecom Corp. v. Chumley*, 522 F. Supp. 2d 429, 449 (N.D.N.Y. 2007).

Defendant asserts that venue is proper in the Southern District of Florida, Fort Lauderdale Division, because its sole place of business is within that district and all of the above-cited factors weigh in favor of transfer to Florida.[9] *See* Defendant's Memorandum of Law at 11-18. To the contrary, Plaintiff argues that its choice of forum must not be disturbed unless "the balance is strongly in favor of the defendant. . . ." *See* Plaintiff's Memorandum of Law at 20 (citation omitted). It further asserts that many of the relevant witnesses live in this District and that this Court has the power to subpoena several non-party witnesses, including two of Defendant's distributors. *See id.* at 20-23. Finally, Plaintiff argues that the situs of the operative facts is within this District because the information "relating to the design, development, and production" of the patented product is within this District. *See id.* at 22 (quoting *Advanced Fiber*, 2008 WL 4890377, at *4).

The Court concludes that the majority of the relevant factors weigh against Defendant's motion to transfer venue. For example, most of the non-party witnesses whom Plaintiff has identified reside in this District; and, therefore, this Court is convenient for them. In addition, this Court has the power to compel the attendance of any such witnesses who are otherwise unwilling to testify. Moreover, many of the relevant documents are located here. Finally, Plaintiff's choice of forum was rational considering the situs of the harm and the location of its business; and, therefore, this Court should give proper deference to Plaintiff's choice of forum. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70-71 (2d Cir. 2001) (quotation omitted).

---

[9] Plaintiff does not contend that venue in the Southern District of Florida is improper.

Accordingly, the Court denies Defendant's motion to transfer venue.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss for lack of personal jurisdiction and/or improper venue, or, in the alternative, to transfer venue, is **DENIED**; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Lowe for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: March 31, 2010
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge